# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-60678

United States Court of Appeals
Fifth Circuit
**FILED**
September 29, 2017
Lyle W. Cayce
Clerk

JOHNNY CARL GROGAN,

    Plaintiff - Appellant

v.

PARVEEN KUMAR; RONALD WOODALL; CYNTHIA FRANKLIN; EDUARDO DIAZ; SMCI'S NURSING STAFF,

    Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

    Johnny Grogan, a Mississippi state prisoner, brings this pro se civil action pursuant to 42 U.S.C. § 1983. He alleges that personnel at the South Mississippi Correctional Institution ("SMCI") violated his Eighth Amendment rights by responding with deliberate indifference to his serious psychiatric needs. Specifically, he alleges that (1) Dr. Parveen Kumar, a psychiatrist, provided inadequate treatment for his depression; (2) Cynthia Franklin, a mental health counselor, gave him similarly deficient care; (3) Dr. Ronald Woodall violated Grogan's rights while processing his administrative grievance; and (4) Lieutenant Eduardo Diaz, Dr. Kumar, and an unidentified

Case: 15-60678   Document: 00514204962   Page: 2   Date Filed: 10/23/2017
Case 1:14-cv-00359-RHW   Document 119   Filed 10/23/17   Page 2 of 14

No. 15-60678

set of nurses all intentionally refused to treat Grogan after his failed suicide attempts.

By agreement of all parties, this matter was handled by a magistrate judge, who granted summary judgment in favor of all defendants. We vacate the grant of summary judgment as to the claims against Kumar and the nurses insofar as those claims arise out of Grogan's July 2014 suicide attempt, but we otherwise affirm. We also vacate a narrow portion of a discovery order to allow Grogan to renew his motion for subpoenas if the case proceeds to trial.

I

Grogan has a documented history of mental illness.[1] Before being incarcerated in June 2007, he had been diagnosed with, for example, "[d]epression" and "[s]uicidal [i]deation." Between June 2007 and September 2013, he was housed in the East Mississippi Correctional Facility, where he received "psychiatric treatment, care, and medication" of which he does not complain. This suit challenges only the adequacy of the care he received after his transfer to SMCI on September 25, 2013.

Much of Grogan's complaint attacks SMCI's general policies regarding mental health. He alleges, for example, that SMCI "does not have an around the clock, on-site psychiatrist." He says SMCI has "[only] two counselors employed [there] for the whole 3,000-something inmates," with wait times for appointments reaching up to one week. He complains that SMCI fails to "train [its] correctional staff to deal with mentally ill prisoners," and that "the correctional staff will laugh at you and make fun of you when you inform them

---

[1] The facts that follow are drawn from Grogan's verified complaint; amended verified complaint of February 2, 2015 (to the extent the magistrate judge granted Grogan leave to file); the documents attached thereto; and Grogan's sworn testimony at the magistrate judge's initial screening hearing.

Case: 15-60678　　Document: 00514204962　　Page: 3　　Date Filed: 10/23/2017
Case 1:14-cv-00359-RHW   Document 119   Filed 10/23/17   Page 3 of 14

No. 15-60678

[you're] having problems mentally." And he alleges that SMCI "fail[s] to separate severely mentally ill inmates from the mentally healthy."

Grogan further contends that he received "professional[ly] . . . negl[igent]" care from defendant Kumar (a psychiatrist). According to Grogan, Kumar "neglected his job as a professional" by failing to conduct a mental health screening when Grogan arrived at SMCI; by not meeting with him until eighteen days later; and by "not see[ing] what was wrong" even after their appointment. He also faults Kumar for refusing to consider Grogan's written description of his mental illness and for providing Grogan with what he considers insufficient one-on-one attention. Grogan agrees, however, that Kumar accurately diagnosed him with depression, prescribed him appropriate medication, and saw him periodically throughout the following year.

Grogan levies similar charges at defendant Franklin (a mental health counselor). He alleges that Franklin "has not been professional with her care" because she refused to document Grogan's difficulties sleeping and because she once stated that she "d[id] not want to see [Grogan] [because] [t]here's nothing wrong with him." In September 2013, Grogan voiced his complaints about Kumar and Franklin in a grievance he submitted through the prison's administrative remedy program ("ARP"). Defendant Woodall later denied the grievance.

The remainder of Grogan's complaint alleges defendants' indifference to his two attempted suicides. His first attempt lasted "[from] January 3 to January 12, 2014." He alleges that he "cut [his] arms, throat, and stomach"; "went [five] days without eating or drinking anything"; and "was [put] on suicide watch." Even then, Grogan says, Kumar "still never evaluated [him] to see what was truly wrong." "All he would ask is 'do you want to stay on suicide watch or do you want off.'" Grogan says Kumar "never checked to see how the situation should have truly been handled," thus effecting a "gross departure[]

No. 15-60678

from professional standards in treatment." That said, Grogan agrees that his wounds were only "superficial," as no sharp objects were available to him.

On July 4, 2014, Grogan again attempted suicide, this time by overdosing medication. For two days, he "was la[id] out on the floor, not able to eat, drink, [or] walk, and barely able to talk." He "could only wake up, vomit, dry heave, then pass out." Grogan says he "received no help" during this period. One nurse who passed by said she "didn't care" and refused to help. Other nurses allegedly refused to help as well. The "tower officer" eventually realized something was wrong and "called medical." The only person to respond, however, was defendant Diaz. Diaz allegedly "observed [Grogan] on the floor about to die" but still "would not help." Diaz merely told him to "[s]leep it off."

As Grogan's complaint acknowledges, his account of his July 4–5 suicide attempt contradicts his medical records. Those records reflect a July 5 visit from Kumar, with Kumar reporting that Grogan was "doing well." Grogan contends that this record is false and that no such visit occurred. In support, he provides his own sworn testimony. He also attaches to his complaint declarations from six other inmates, each of whom observed Grogan in pain on the floor for two days, and each of whom attests that no one provided help. Grogan consistently has maintained that "the cameras . . . and the logbook will show [that] [he] was l[eft] on that floor . . . unattended."

On July 19, 2014, Grogan filed a second ARP grievance. Although the new grievance reiterated his earlier concerns, it also described his recent suicide attempts. The investigator deemed the grievance duplicative of the first grievance and declined to process it. He reminded Grogan that his first grievance had already been denied and advised him that, "if [he] w[as] not satisfied," he could "seek judicial review." Grogan then filed this action.

4

Case: 15-60678 Document: 00514204962 Page: 5 Date Filed: 10/23/2017
Case 1:14-cv-00359-RHW Document 119 Filed 10/23/17 Page 5 of 14

No. 15-60678

II

Grogan appeals the magistrate judge's grant of summary judgment for all defendants. Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Our review is de novo. *Robinson v. Orient Marine Co.*, 505 F.3d 364, 365–66 (5th Cir. 2007).

A

Grogan's claim against Diaz arrives in an unfortunate posture. As noted above, Grogan filed two ARP grievances: one in September 2013 (which did not mention Diaz) and one in July 2014 (which did). The latter grievance was attached to Grogan's judicial complaint. Nonetheless, Diaz's motion for summary judgment cited only the September 2013 grievance and used that as an (incomplete) basis to argue that Grogan failed to exhaust his administrative remedies under 42 U.S.C. § 1997e(a). Grogan's opposition noted Diaz's omission and attached the July 2014 grievance—but, due to a copying error, attached only the first page. Then, relying on Grogan's summary judgment filing, the magistrate judge granted summary judgment for Diaz on the (mistaken) ground that the July 2014 grievance "makes no mention of the July 4th incident or Defendant Diaz's alleged involvement." Had Grogan attached the second page to his opposition—or had he expressly cited the complete copy already in the record—the magistrate judge would have known that the premise of his ruling was factually incorrect.

On appeal, Grogan explains the mistake and asks for a reversal. Diaz responds that the missing page of Grogan's grievance cannot be considered now. On the present record, we agree with Diaz. "Although on summary judgment the record is reviewed *de novo*," this court typically "will not consider evidence or arguments that were not presented to the district court for its consideration in ruling on the motion." *Skotak v. Tenneco Resins, Inc.*, 953

Case: 15-60678     Document: 00514204962     Page: 6     Date Filed: 10/23/2017
Case 1:14-cv-00359-RHW   Document 119   Filed 10/23/17   Page 6 of 14

No. 15-60678

F.2d 909, 915 (5th Cir. 1992); *see also, e.g.*, Fed. R. Civ. P. 56(c)(3); *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896–97 (5th Cir. 2013); *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). Grogan does not persuade us to depart from that rule here.

We therefore affirm the grant of summary judgment in Diaz's favor. We note, however, that the magistrate judge dismissed the Diaz claim without prejudice, so Grogan may be able to refile and present the complete record to the court.

B

The magistrate judge also granted summary judgment in favor of Kumar, Franklin, and the unidentified nurses (collectively, "the medical defendants"). He found no genuine material disputes on the issue of deliberate indifference. Prison officials violate the Eighth Amendment's ban on cruel and unusual punishment when they show deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). An official is deliberately indifferent if he "knows that [the] inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Reeves v. Collins*, 27 F.3d 174, 176–77 (5th Cir. 1994). Here, Grogan alleged deliberate indifference on at least three different theories, which we address separately below.

1

Grogan's broadest theory of deliberate indifference expands beyond the particular defendants and finds constitutional error in SMCI's mental health policies themselves. He contends, for example, that the Constitution requires "around the clock, on-site psychiatrists" and wait times of less than one week. The magistrate judge determined that these aspirational theories failed to

Case: 15-60678      Document: 00514204962      Page: 7      Date Filed: 10/23/2017
Case 1:14-cv-00359-RHW   Document 119   Filed 10/23/17   Page 7 of 14

No. 15-60678

state a deliberate indifference claim against "any of these [defendants], or for that matter against any prison staff."[2] We see no error in that conclusion.

Both here and before the magistrate judge, Grogan has failed to argue that the challenged policies resulted in any objective risk of serious harm to him. Nor has he argued that the policies were implemented in knowing disregard of such a risk. Instead, he argues essentially that SMCI's mental health care standards fall below its general policy statements and its job descriptions for its employees. But, even if true, this showing cannot itself establish deliberate indifference. *See Farmer*, 511 U.S. at 847 (deliberate indifference requires both objectively serious harm and subjective awareness of that harm). Nor does it constitute a violation of due process. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). In short, because Grogan fails to show that his psychiatric policy preferences are embodied in constitutional standards, his preferences do not state a claim for a constitutional violation.

2

Grogan also claims that the general course of his treatment by Kumar and Franklin amounted to deliberate indifference. The magistrate judge rejected this claim as belied by Grogan's medical records. Again, we agree.

"Because 'an inadvertent failure to provide adequate medical care' does not violate the Eighth Amendment," *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) (quoting *Estelle*, 429 U.S. at 105), "[a] showing of deliberate indifference requires the prisoner to submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a

---

[2] In another order issued the same day, the magistrate judge denied Grogan leave to amend his complaint to add the Mississippi Department of Corrections and the Superintendent of SMCI as defendants on grounds of futility. Grogan does not appeal that order.

wanton disregard for any serious medical needs,'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). Mere "negligence" does not constitute deliberate indifference, "nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.*

Here, Grogan's medical records serve as undisputed evidence that Kumar and Franklin made good faith efforts to treat Grogan's mental illness in the course of their frequent appointments with him. According to the records, Kumar examined Grogan over one dozen times between October 13, 2013 and October 29, 2014—more than once per month on average. Each meeting resulted in a documented treatment plan that addressed, among other things, whether to modify Grogan's medication schedule. Grogan also met with mental health counselors Cynthia Franklin and Kimberly Allen around ten times during the same time period. Regular nurse visits, sick calls, and medical clinics filled the remaining gaps.

To be sure, Grogan disputes whether one of Kumar's psychiatric appointments occurred (as discussed below). But as to the other documented psychiatrist appointments and documented counseling sessions, Grogan adduces no contrary evidence. His opposition before the magistrate judge asserted only that Kumar gave him insufficiently individualized attention and that Franklin "argue[d]" with him about his diagnosis. Such disagreements do not reach the level of deliberate indifference. *See, e.g.*, *Gobert*, 463 F.3d at 346. Summary judgment on this point was warranted.

3

Grogan lastly alleges that Kumar and the unnamed nurse defendants were deliberately indifferent to his July 2014 suicide attempt. Before the magistrate judge, the medical defendants' summary judgment brief failed to address these allegations. Grogan's opposition, on the other hand, argued that

Case: 15-60678 Document: 00514204962 Page: 9 Date Filed: 10/23/2017
Case 1:14-cv-00359-RHW Document 119 Filed 10/23/17 Page 9 of 14

No. 15-60678

the disputed facts surrounding the July 2014 attempt precluded summary judgment. The magistrate judge rejected Grogan's argument, assigned the medical records dispositive weight, and granted summary judgment for defendants on the issue. We now vacate that determination.[3]

A genuine dispute exists as to whether Grogan attempted suicide on July 4–5, 2014, and, if he did, whether Kumar and the defendant nurses responded in a reasonable manner. True, the medical records state that Kumar examined Grogan on July 5 and wrote that he was "doing well," was "calm," and was without "new issues or concerns." But that evidence is disputed. Grogan testifies (in the form of his verified pleadings and sworn testimony) that on July 5, 2014, he in fact was *not* doing well, and he in fact did *not* meet with Kumar. To the contrary, he attests that he spent July 4 and 5 "la[id] out on the floor, not able to eat, drink, [or] walk, and barely able to talk," and ignored by prison staff. His summary judgment opposition brief also attached and cited declarations from six inmates, made on personal knowledge, attesting to the same. Declarations and verified pleadings that are dated and made on penalty of perjury (as these are) constitute "[]adequate summary judgment evidence." *Stewart v. Guzman*, 555 F. App'x 425, 431 (5th Cir. 2014) (per curiam) (unpublished) (citing 28 U.S.C. § 1746). It is not the court's role on summary judgment to weigh competing evidence or make credibility determinations.

---

[3] We do not consider Grogan's allegations regarding his January 2014 suicide attempt. Although Grogan pressed the July attempt before the magistrate judge as a reason to deny the medical defendants' motion for summary judgment, he made no such argument regarding his January attempt. He thereby waived the argument. *See, e.g.*, *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) ("[I]f a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court.").

No. 15-60678

Thus, because a reasonable jury could credit either the medical records or Grogan's conflicting account, we hold that this factual dispute is genuine.[4]

We therefore vacate the grant of summary judgment in favor of Kumar and the unidentified nurses, but only as to Grogan's deliberate indifference claim arising from the July 2014 suicide attempt. We otherwise affirm the grant of summary judgment for the medical defendants.

C

The last defendant, Woodall, is the ARP adjudicator who rejected Grogan's September 2013 grievance. Grogan says Woodall "interfer[ed] with [his] mental health treatment" by (1) rejecting his grievance without an adequate investigation and (2) doing so without the proper psychiatric credentials. (To Grogan, Woodall is "nothing more than a medical doctor.") In opposition before the magistrate judge, Grogan further argued that Woodall's investigation violated internal policies and procedures.

The magistrate judge correctly determined that these allegations fail to state a claim. There is no evidence or allegation that Woodall's conduct placed Grogan in substantial risk of serious harm, much less evidence that Woodall did so with subjective awareness of the risk. *See Farmer*, 511 U.S. at 847. Nor has Grogan adduced evidence of a causal link between Woodall and the allegedly indifferent response to the July 2014 suicide attempt. *See Thompkins*, 828 F.2d at 304 (causal connection required for § 1983 supervisory liability). Finally, it is well established that prisoners have no due process rights in the inmate grievance process. *See, e.g.*, *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). We therefore affirm the magistrate judge's entry of summary judgment on this claim.

---

[4] We also do not consider whether Grogan faced a "substantial risk of serious harm" during his July 2014 suicide attempt—an issue no party has briefed.

10

No. 15-60678

## III

In addition to summary judgment, Grogan appeals two of the magistrate judge's discovery orders.[5] Because we vacate and remand limited aspects of the court's grant of summary judgment (discussed above), we consider these discovery issues as well. We review discovery orders only for abuse of discretion. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 817 (5th Cir. 2004).

### A

First, Grogan appeals the denial of his motions for a mental examination of himself pursuant to Rule 35 of the Federal Rules of Civil Procedure. Rule 35 permits the district court, upon a showing of good cause, to "order a party whose mental . . . condition . . . is in controversy to submit to a . . . mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a). The "in controversy" and "good cause" requirements demand more than "mere relevance." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). Rather, they "require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Id.* District judges serve as "discriminating" gatekeepers as to both requirements. *Id.*

Grogan contends that he needed a mental examination to (1) demonstrate the seriousness of his mental illness and (2) dispute Kumar's contention that Grogan was in stable condition on July 5, 2014. As to the first point, the remaining defendants concede that the extent of Grogan's mental illness is generally undisputed. As to the second point, a mental examination in 2015 or later bears only weak relevance—let alone "real[]" and "genuine[]"

---

[5] Grogan's notice of appeal of the magistrate judge's final order also permits us to review "the prior orders leading up to it." *United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 328 (5th Cir. 2016) (internal quotation mark omitted).

11

Case: 15-60678 Document: 00514204962 Page: 12 Date Filed: 10/23/2017
Case 1:14-cv-00359-RHW Document 119 Filed 10/23/17 Page 12 of 14

No. 15-60678

relevance—to the condition of Grogan's mental health on a specific date in 2014. And, thirdly, the magistrate judge found that Grogan's purpose was in effect "to use Rule 35 to provide himself with an expert witness." That is not good cause. *See* 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2231 (3d ed. updated Apr. 2017) ("Under Rule 35, the court has no authority to appoint a medical expert to examine plaintiff on plaintiff's motion. . . . No civil litigant, even an indigent one, has a right under the rule to an award of costs for a medical examination, or to appointment of an expert commanded to perform such an examination without being paid."). Grogan has not shown that the magistrate judge abused his discretion here.

B

Second, Grogan appeals the denial of his four motions to issue subpoenas under Rule 45 of the Federal Rules of Civil Procedure. Grogan sought subpoenas for a variety of items, not all of which are relevant in light of our disposition of this appeal. We limit our discussion here to Grogan's request to subpoena SMCI Superintendent Raymond Byrd for camera footage that might have documented Grogan's suicide attempt in early July 2014.

Grogan made clear from the outset of this lawsuit that he considers camera footage from July 4 and 5, 2014, to be essential to his case. At the court's initial screening hearing in December 2014, Grogan and the magistrate judge had the following exchange:

> THE COURT: Okay. Do we understand—you understand the [discovery] procedure we are going to use about this?
>
> MR. GROGAN: If I needed to subpoena in the camera footage from that zone, would I do that now or do I have to file it in a motion?
>
> THE COURT: You can also ask for subpoenas and such or production—that would be a production of

Case: 15-60678 Document: 00514204962 Page: 13 Date Filed: 10/23/2017
Case 1:14-cv-00359-RHW Document 119 Filed 10/23/17 Page 13 of 14

No. 15-60678

documents. You can ask for that, and they will respond to that. Do you understand?

MR. GROGAN: Yes, Your Honor.

THE COURT: I don't know if [the defendants] themselves would have any of those documents at all or the footage. I doubt they would.

On December 29, 2014, Grogan propounded a request for production to defendants pursuant to Rule 34. He sought, among other things, "any and all camera footage from Unit 8 A zone on July 4th and July 5th, 2014." Before receiving a response, he moved the magistrate judge to subpoena Byrd under Rule 45 for essentially the same footage. Two weeks later, the medical defendants responded that they had no such video in their possession.

In June 2015, the magistrate judge denied Grogan's motion to subpoena the camera footage. The order cited a single ground for the denial: that, although Rule 45 is the appropriate vehicle for compelling the production of evidence from non-parties, the "information [Grogan] seeks should be within the possession, custody, or control of the Defendants." This rationale is inconsistent with the court's earlier statement at the hearing. It also was not true. Given the alleged importance of the video footage to Grogan's remaining claim, and given the correspondingly high risk of undue prejudice if Grogan cannot obtain it, we conclude that this denial constituted abuse of discretion. In the event that this case proceeds to trial, Grogan should be permitted to renew his motion for this subpoena. We accordingly vacate the magistrate judge's order denying Grogan's motion for subpoenas in this narrow respect.

IV

As a final matter, Grogan asserts that the magistrate judge "obstructed justice by avoiding facts that w[ere] in his face." This argument is frivolous, and we reject it out of hand.

No. 15-60678

V

In sum: We affirm the grant of summary judgment with respect to Diaz, Woodall, and Franklin. We vacate the grant of summary judgment with respect to Kumar and the defendant nurses, but only to the extent Grogan's claims arise from his alleged suicide attempt in July 2014. We affirm the denial of Grogan's Rule 35 motions and vacate the denial of Grogan's Rule 45 motion to subpoena videos relevant to the July 2014 suicide attempt.

This case is remanded for further proceedings consistent with this opinion.